# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA
v.

CHARLES TOMLIN
a/k/a Rick Tomlin

**CRIMINAL COMPLAINT**

CASE NUMBER: 2:10-MJ-

FILED IN CLERK'S OFFICE
U.S.D.C Gainesville

DEC 20 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>November 9, 2010</u>, in <u>Hall</u> County, in the Northern District of Georgia defendant(s) did, Track Statutory Language of Offense)

in a matter within the executive branch of the Government of the United States, knowingly and willfully make a materially false, fictitious, or fraudulent statement or representation, by falsely claiming that employees of the Environmental Protection Agency had assessed fines against his place of business,

in violation of Title <u>18</u> United States Code, Section(s) <u>1001(a)</u>.

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

Please see attached affidavit

Continued on the attached sheet and made a part hereof.  (X) Yes ( ) No

_____
Signature of Complainant
Nicolas Evans

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

<u>December 20, 2010</u>                    at    <u>Gainesville, Georgia</u>
Date                                                City and State

Susan S. Cole
<u>United States Magistrate Judge</u>          <u>Susan S. Cole</u>
Name and Title of Judicial Officer           Signature of Judicial Officer
AUSA Paul R. Jones

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Nicolas L. Evans, being duly sworn, depose and state the following:

## INTRODUCTION

1. Currently, I am a Special Agent with the Environmental Protection Agency Office of Inspector General (EPA OIG) and have been employed in this capacity since August 1, 2009. As such, I am a law enforcement officer within the meaning of 18 U.S.C. § 3063. I am currently assigned to the Atlanta, Georgia field office. Prior to becoming a Special Agent, I was employed as a federal Park Ranger with the U.S. Army Corps of Engineers for over five years. I hold a Bachelor of Science degree from the Minnesota State University. I have completed forty-five (45) credit hours of graduate school education in the Masters of Criminal Justice program at the University of Cincinnati. I am a 2009 graduate of the basic criminal investigator training program at the Federal Law Enforcement Training Center in Glynco, Georgia. In my current position, I am responsible for the investigation of federal crimes.

2. The information contained in this Affidavit is based upon my personal knowledge, information provided to me by other Special Agents of EPA OIG, and other sources as noted. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of an arrest warrant, it does not set forth each and every fact that I or others have learned during the course of the investigation.

## PURPOSE OF AFFIDAVIT

3. This Affidavit is presented in support of an application for a complaint and arrest warrant for CHARLES RICKY TOMLIN for making a materially false, fictitious, or

fraudulent statement or representation within the jurisdiction of the executive branch of the Government of the United States, in violation of 18 U.S.C. § 1001(a).

## BACKGROUND

4. CHARLES "RICK" TOMLIN owns Street Dreams, a vehicle repair and customization business located in Gainesville, GA. TOMLIN claims that he is in the process of purchasing the land and associated buildings at 2515 Old Cornelia Hwy., Gainesville, GA, which is the current location of Street Dreams.

## OVERVIEW OF INVESTIGATION

5. On November 5, 2010, your affiant received a complaint regarding the possible false personation of an Environmental Protection Agency ("EPA") agent. On November 9, 2010, EPA OIG Special Agent Alan Huntsinger and your affiant interviewed CHARLES "RICK" TOMLIN at his place of business. The substance of this interview is as follows: TOMLIN stated that an open well located behind this business flooded into the road approximately four weeks prior. TOMLIN claims that around this time he received a visit from a male and female representing themselves as employees of the EPA. The male and female were driving a white Dodge pickup with official looking placards on the side of the vehicle. The male gave the name "Robert" (no last name) and showed a badge and credentials to TOMLIN. TOMLIN stated he did not get a good look at the presented badge, but thought it said "EPD" (which is the acronym for the Georgia Environmental Protection Division). TOMLIN described "Robert" as a white male in his early to mid thirties, around six feet tall with closely cut dark hair, dressed in blue kakis with corfam shoes. The female stated her name was "Tracy." TOMLIN did not provide a physical description of Tracy, but described her as "standoffish." Robert informed TOMLIN he was there because the EPA had received complaints about his property.

TOMLIN stated he knew of no problems with the property. Robert proceeded to walk around the rear of the building and located batteries which were hidden under more than a foot of kudzu. TOMLIN stated Robert must have already known where these items were located, as he walked straight to this site. TOMLIN and Robert found several other items around the property such as tires, batteries, and an oil drum. Robert told TOMLIN to "plan on an open check policy," as the fines for these alleged violations were going to be expensive. Robert stated that the fines could be close to two million dollars, and he asked for a bank account number from TOMLIN, which TOMLIN did not provide. TOMLIN stated that Tracy took notes of the meeting. Robert's actions and statements as alleged are completely inconsistent with EPA policy and practice. TOMLIN stated Robert returned to Street Dreams three days later, this time accompanied by another male who identified himself as "Dean." TOMLIN described Dean as an older white male with salt and pepper hair. Both men were dressed in work kakis and boots. TOMLIN stated they were again in the white truck, which has the same appearance as a Georgia EPD vehicle. Both Robert and Dean showed TOMLIN their badges and credentials. During the second visit, Robert walked around the property and took notes and photographs, along with soil and water samples. Robert later provided these photos to TOMLIN, who presented them to your affiant during the interview. During the second visit Robert requested $272,000 in fines. Robert stated they could settle the matter right then if TOMLIN paid the fine. TOMLIN stated Robert returned to Street Dreams a third time, early in the morning, in what TOMLIN describes as a "blacked out" Ford Crown Victoria. Robert appeared to be conducting surveillance from his vehicle which was parked at a business located across the street from Street Dreams. TOMLIN stated Robert was confronted by an employee of Street Dreams and stated he was working on a

different case. TOMLIN stated Robert continued to call Street Dreams twice a day. During one of these calls, Robert informed TOMLIN that the test results came back on the stream behind his property and that they revealed high levels of phosphates and petroleum. TOMLIN requested that Robert send a copy of the report to his attorney. TOMLIN was scheduled to meet Robert on November 9, 2010. This meeting was requested by Robert so that he could oversee the cleanup. Upon request of your affiant, this meeting was postponed until November 16, 2010. TOMLIN could not provide exact dates of any of the first three meetings with Robert, but TOMLIN confirmed they all occurred within the four (4) weeks prior to November 9, 2010.

6. On November 10, 2010, EPA OIG Special Agent Joel Tomas secured TOMLIN's consent to install an audio recorder on Street Dreams' telephone. This device was installed to allow TOMLIN to record his telephone calls with Robert. TOMLIN never recorded any calls.

7. On November 12, 2010, your affiant interviewed TOMLIN by telephone. TOMLIN stated Robert had just left Street Dreams. TOMLIN stated Robert arrived in a black truck with a police light bar on top displaying Georgia tag number BSQ292. Robert was accompanied by "Roger" (last name unknown). Roger informed TOMLIN that he is a correctional officer but was going to work for the EPA. Robert informed TOMLIN that his fine could be up to two million dollars as the EPA, like the IRS, can charge interest. Robert told TOMLIN that he would freeze the fine at $275,000.

8. In response to the complaint, EPA OIG Special Agents conducted an undercover operation at Street Dreams from November 16, 2010 through November 18, 2010, to identify Robert and any other person claiming to be acting on behalf of the EPA. TOMLIN had allegedly set up a meeting with Robert to occur on November 16, 2010.

4

The EPA OIG Atlanta Field Office augmented its staff by flying in three (3) Special Agents from Pennsylvania, Washington D.C., and North Carolina. Additionally, an EPA OIG Special Agent from Tennessee drove to Gainesville for the duration of this operation. A total of ten (10) EPA OIG Special Agents assisted in the undercover operation. During the undercover operation, EPA OIG Special Agent Sean Earle acted as an undercover potential investor in Street Dreams. The meeting between TOMLIN and Robert never occurred on November 16 or any subsequent date while EPA OIG Special Agents were participating in the undercover operation.

9.  In an effort to identify Robert, a United States Magistrate Judge authorized a trap and trace device for Street Dreams' telephone number (770-297-1495). The trap and trace became active on November 18, 2010. AT&T has provided incoming call data from November 17, 2010 to present.

10. On December 6, 2010, EPA OIG Special Agent Joel Tomas and your affiant interviewed RICK TOMLIN. TOMLIN stated that he cannot open a bank account because of "something about the Patriot Act and the EPA." TOMLIN inferred that Robert must have contacted United Bank. TOMLIN stated that he tried to set up a bank account with United Bank. TOMLIN stated he cannot open or close a bank account until the bank hears from the EPA. TOMLIN stated Robert has not returned to Street Dreams since the Friday after EPA OIG Special Agents conducted the undercover operation. TOMLIN cannot recall Robert's last name. TOMLIN stated that he has asked Robert for business cards and for Robert to write up the corrective actions for the property where Street Dreams is located. Robert told TOMLIN that he recently started with the EPA and so did not have business cards. TOMLIN stated that Robert's telephone number showed

up on his caller identification system as either private or US Government. TOMLIN provided Hall County Fire Marshal "Dax" as a witness who has met Robert.

11. On December 6, 2010, your affiant placed a telephone call to TOMLIN regarding your affiant's ability to contact United Bank on TOMLIN's behalf. This was in regard to TOMLIN's alleged problems at the bank regarding the "Patriot Act" and the "EPA." During this telephonic conversation, TOMLIN provided the name of "J.S." at the Jesse Jewel branch of United Community Bank as his contact.

## PROBABLE CAUSE

12. On November 12, 2010, your affiant conducted a vehicle registration search through the National Crime Information Center's (NCIC) records for Georgia vehicle tag BSQ292, which was the tag number that TOMLIN reported was on Robert's vehicle. Owner information for this tag number could not be found in this system.

13. On November 17, 2010, TOMLIN told EPA OIG Special Agent Sean Earle that, on one occasion, Robert had arrived at Street Dreams during TOMLIN's lunch. TOMLIN stated that Robert sat with him while TOMLIN was having lunch. TOMLIN provided "R.S." as a witness to this event and stated she had prepared lunch that day. On November 18, 2010, Special Agent Earle discussed this event with "R.S." while Special Agent Earle was engaged in the undercover role. "R.S." stated this event never occurred.

14. After a review of the trap and trace for November 17, 2010, your affiant discovered no incoming calls to telephone number (770) 297-1495 during the period of 09:30am through 09:45am, when TOMLIN alleged that he received a call from Robert. The trap and trace was not able to corroborate the information provided by TOMLIN or to corroborate that he ever received any calls from Robert.

15. On December 6, 2010, EPA OIG Special Agent Joel Tomas and your affiant interviewed J.S., Executive Vice President, United Community Bank, Gainesville, GA. TOMLIN previously provided J.S. as a contact regarding problems he was having with United Community Bank. J.S. stated that she met TOMLIN a few weeks earlier through a referral to the bank. J.S. stated that she had not informed TOMLIN of problems with his account due to an EPA investigation or the Patriot Act. Additionally, TOMLIN has not requested a loan from United Community Bank. This information is inconsistent with TOMLIN's statement that he cannot open a bank account or access funds at United Community Bank because of "something about the Patriot Act and the EPA."

16. On December 6, 2010, EPA OIG Special Agent Joel Tomas and your affiant interviewed Amy J. McAllister-Vaughn, Environmental Specialist, Georgia Department of Natural Resources Environmental Protection Division. McAllister-Vaughn stated that her first contact with RICK TOMLIN occurred on October 28, 2010, when TOMLIN called regarding acquiring a soil test at Street Dreams. TOMLIN requested that McAllister-Vaughn perform a soil test at this property. TOMLIN told McAllister-Vaughn that he had been contacted by Robert Dean and Chris Walker of the EPA and assessed a fine of $82,000 for environmental problems on the property where Street Dreams is located. TOMLIN informed McAllister-Vaughn that he has received a "pile" of business cards from the EPA, which he has provided to his attorney. This information is inconsistent with TOMLIN's statement that he has never received a business card from Robert. To the best of your affiant's knowledge, there are no employees named Robert Dean or Chris Walker working in the Atlanta EPA office, and there is no evidence that any fine has been assessed on the Street Dreams property.

17. On December 9, 2010, EPA OIG Special Agent Tomas and your affiant interviewed Dax Lewis, Fire Inspector, Hall County Fire Marshal's Office. Lewis was interviewed regarding TOMLIN's statement that Lewis has met the alleged EPA employees or impersonators. Lewis stated that he has been to Street Dreams twice and that he has had no contact with EPA employees or agents. Lewis has not been contacted by EPA employees regarding environmental violations at this property. Lewis stated there were only a few others at Street Dreams during his visit: an employee of Street Dreams, "R.S.," and a pest control employee. Lewis stated he has not been to Street Dreams or had contact with TOMLIN since September 29, 2010. Lewis' statement is inconsistent with TOMLIN's statement that Lewis has met Robert.

18. The investigation has not identified "Robert" or any other person claiming to be acting on behalf of the EPA. TOMLIN never recorded any alleged telephone call made by Robert; the trap and trace showed that nobody called TOMLIN during the time when he claimed that Robert called; and agents conducting surveillance never saw anyone purporting to be an EPA employee.

## CONCLUSION

19. Based on the foregoing, I believe there is probable cause to believe that CHARLES "RICK" TOMLIN fraudulently represented to Special Agents of the Environmental Protection Agency that he had contact with individuals representing themselves as EPA agents or employees, in violation of Title 18, United States Code, Section 1001(a).


FURTHER AFFIANT SAYETH NAUGHT.