[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11305
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cr-00002-WCO-SSC-1


UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

CHARLES TOMLIN, a.k.a. Rick Tomlin,

                                                            Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 12, 2012)

Before CARNES, BARKETT, and PRYOR, Circuit Judges.

PER CURIAM:

      Charles Tomlin appeals his conviction for making a false statement in a

matter within the jurisdiction of a department or agency of the United States in violation of 18 U.S.C. § 1001(a)(2).  He also challenges his 20-month sentence of imprisonment and an award of $43,331.69 in restitution.  He contends that the district court should have granted his motion for a judgment of acquittal because the evidence was insufficient to sustain his conviction.  He also contends that the district court incorrectly included the salaries of the EPA agents who undertook an investigation as a result of his false statement when calculating the loss amount for sentencing purposes as well as the restitution amount.

I.

On September 1, 2010, Charles Tomlin began renting property in Gainesville, Georgia from James Cape.  Tomlin used this property to run "Street Dreams," an automotive repair shop.  According to Cape, Tomlin never paid rent and complained that the EPA "was after the property," and that "there was a lot of cleanup that needed to be done to [the property]."

On October 28, 2010, Tomlin called Amy Vaughn, an Environmental Specialist with the Georgia Environmental Protection Division, to ask for soil testing on the property to check for solid waste issues.  When Vaughn visited Street Dreams on November 2, 2010, Tomlin told her that three people from the EPA—Chris Walker, Robert Dean, and Frank Baker—had come to the property

2

and told him that they were going to fine him over $80,000. Vaughn then contacted the EPA to pass on the information she received from Tomlin. She also found that there was a person named Frank Baker working for the EPA and contacted him, but Baker did not recognized Tomlin's name, address, or case. Baker, in turn, passed the information he received from Vaughn on to his supervisors and to the EPA Office of the Inspector General.

The EPA then assigned Special Agent Nicholas Evans to investigate Tomlin's claims. Evans was concerned that either someone was pretending to be an EPA employee or that an actual EPA employee was acting corruptly. On November 9, 2010, Evans and another agent went to Street Dreams to talk with Tomlin. Tomlin told them that about four weeks earlier an open well behind Street Dreams had overflowed, causing people from several different agencies to visit the property. Tomlin said that two of these people—whom he identified as "Robert" and "Tracy"—claimed to be agents with the EPA. Tomlin told Evans that Robert had told him that he was in violation of environmental regulations, that the fines could total $2 million, that Tomlin should "plan on an open check policy," and that Tomlin needed to give Robert his bank account number.

Evans' investigation of the alleged EPA employee continued until November 18, 2010. During that time, Tomlin told Evans that Robert visited

Street Dreams on at least two more occasions, took water and soil samples, and offered to settle the matter for various amounts of money. Tomlin also told Evans that Robert called him as often as twice a day. Based on these statements, Evans had a recording device installed on Tomlin's business phone to record calls from Robert, as well as a "trap and trace" to record the telephone numbers of incoming calls. Evans also brought in agents from Washington, D.C., Pennsylvania, North Carolina, and Tennessee to participate in an undercover operation to find Robert.[1] Despite those efforts, the agents never saw a person matching the description of Robert and also were unable to identify any calls to Tomlin from Robert.

As a result, on November 18, 2010, the focus of the investigation shifted to Tomlin. Evans questioned Tomlin on December 6, 2010, but Tomlin continued to assert that there was an EPA employee named Robert investigating him. Tomlin was arrested on December 20, 2010 and pleaded not guilty to making a false statement in a matter within the jurisdiction of an agency of the United States in violation of 18 U.S.C. § 1001(a)(2). At trial, Tomlin moved for a judgment of acquittal under Rule 29 at the close of the government's case. That motion was denied, and Tomlin did not renew his Rule 29 motion at the close of all of the

---

[1] This was done in part because if Robert was a corrupt agent or employee from the Atlanta EPA office, he probably would not recognize a special agent from another jurisdiction.

4

evidence. The jury returned a verdict of guilty, and the district court entered judgment on the verdict.

The presentence investigation report assigned Tomlin a base offense level of six. The PSI also concluded that the EPA had suffered a total loss of $43,331.49, which consisted of $39,414.40 for the salaries of the agents who had investigated the alleged EPA agent harassing Tomlin and $3,917.09 for operating expenses incurred during the investigation such as gasoline, airfare, and hotels. Because Tomlin's conduct resulted in a loss between $30,000 and $70,000, he received a 6-level enhancement, for a total offense level of twelve. He had a criminal history category of III, resulting in a guidelines range of 15 to 21 months imprisonment. The district court imposed a sentence of 20 months imprisonment, a $5,000 fine, $43,331.69 in restitution,[2] and three years of supervised release. This is Tomlin's appeal.

## II.

Tomlin first contends that the district court erred by denying his Rule 29 motion for a judgment of acquittal. Tomlin did not properly preserve his challenge to the sufficiency of the evidence by renewing his Rule 29 motion at the

---

[2] The district court's restitution calculation is 20 cents more than the PSI recommendation. Neither party has argued that this was an error so we need not address that issue.

close of all of the evidence.  See United States v. Edwards, 526 F.3d 747, 756 (11th Cir. 2008).  We therefore review only for a manifest miscarriage of justice, which requires evidence on a key element of the offense to be so tenuous that a conviction would be shocking.  Id.

A conviction under 18 U.S.C. § 1001(a)(2) requires proof of five elements: (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction.  United States v. Lawson, 809 F.2d 1514, 1517 (11th Cir. 1987). Tomlin presumably challenges the government's evidence on the specific intent element, because he argues that the government "presented little evidence showing why Mr. Tomlin would deliberately commit fraud upon the government." Appellant's Brief at 13.  The specific intent required by the statute is the "intent to deceive by making a false or fraudulent statement."  United States v. Dothard, 666 F.2d 498, 503 (11th Cir. 1982).  The government presented evidence on this element, including evidence that Tomlin made false statements directly to government officials and failed to renounce those false statements even after learning that the EPA was conducting an investigation into his allegations.  The government also presented evidence from which the jury could infer that Tomlin used his false statements about environmental contamination and the purported EPA investigation to avoid paying rent on the Street Dreams property.  Because

6

that evidence is not so tenuous that a conviction would be shocking, the district court did not err in denying Tomlin's Rule 29 motion for a judgment of acquittal.

### III.

Tomlin also contends that the district court erred in its sentencing guidelines calculation by including the salaries of EPA investigators in the amount of loss. We review for clear error the district court's determination of the amount of loss, and we review <u>de novo</u> the district court's interpretation of the sentencing guidelines. See <u>United States v. Barrington</u>, 648 F.3d 1178, 1197 (11th Cir. 2011).

Section 2B1.1(b)(1)(D) of the sentencing guidelines imposes a six-level increase to a base offense level if the amount of loss is more than $30,000 but less than $70,000. The application notes to § 2B1.1 define "loss" as the greater of actual loss or intended loss, and "actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i).[3] Pecuniary harm, in turn, is defined as "harm that is monetary or that otherwise is readily measurable in money," and does not include "emotional

---

[3] "When it comes to the interpretation of the guidelines, Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." <u>United States v. Wilks</u>, 464 F.3d 1240, 1245 (11th Cir. 2006) (quotation marks omitted).

7

distress, harm to reputation, or other non-economic harm." Id. § 2B1.1 cmt. n.3(a)(iii). The application notes also provide that the "[c]ost to the government of . . . the prosecution and criminal investigation of an offense" is excluded from loss. Id. § 2B1.1 cmt. n.3(D)(ii).

The government notes that there were two separate investigations in this case: one investigation to locate the person who was trying to get money from Tomlin by claiming to be an EPA agent and a second investigation to establish that Tomlin had made false representations to EPA special agents about the alleged EPA employee. The costs associated with the second investigation were not included in the loss amount, consistent with the "Exclusions from loss" application note to U.S.S.G. § 2B1.1. Id. § 2B1.1 cmt. n.3(D)(ii).

Tomlin, however, argues that the district court erred in its calculation of the loss amount because it included the salaries of EPA agents who participated in the first investigation. Tomlin argues that those salaries, which totaled $39,414.40, should not have been included because the government would have had to pay the agents whether or not they were investigating him. While Tomlin might be correct that the EPA would have had to pay its agents' salaries whether or not they were investigating him, that does not necessarily mean that the district court erred in its loss calculation. Nine special agents from the EPA spent 320 hours looking for

8

Robert, the allegedly corrupt EPA employee, as a direct result of Tomlin's false statements. The time spent searching for Robert could have been spent investigating other matters, and the district court calculated the value of this lost time based on the salaries of those EPA agents.[4]

The application notes to § 2B1.1 recognize the difficulty of accurately calculating the loss in cases involving fraud or deceit, noting that "[t]he court need only make a reasonable estimate of the loss," and that "the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1 cmt. n.3(C); Barrington, 648 F.3d at 1197. While the application notes do provide that loss does not include the cost of investigating an offense, the salaries of the EPA agents in this case do not represent the "cost of investigating" Tomlin's offense, because that investigation did not begin until November 18. Instead, they represent the time the EPA spent investigating Robert—a non-existent person—as a direct result of Tomlin's false statement. The district court therefore did not err

---

[4] Tomlin concedes in his brief that "the government arguably lost some time that might have been spent on another investigation" but argues that the lost time still should not have been included in the loss amount because there is no evidence that other investigations would have been a better use of time. Appellant's Brief at 10–11. That argument misses the point. Whether or not other investigations would have been more fruitful does not change the fact that the government lost the opportunity to pursue those investigations because it was instead searching for Robert as a result of Tomlin's false statements.

9

by including the cost of that time in calculating the loss to the government.[5]

IV.

Tomlin's final contention is that the salaries of the EPA agents who participated in the first investigation should not have been included in the restitution amount because restitution is intended to "make the victim whole," and the agents' salaries would have been paid regardless of Tomlin's actions. Appellant's Brief at 6. We review de novo the legality of an order of restitution and review for clear error the factual findings underlying a restitution order. United States v. Valladares, 544 F.3d 1257, 1269 (11th Cir. 2008).

When sentencing a defendant for a crime with an identifiable victim who has suffered a pecuniary loss, "the court shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1), (c)(1)(B). A victim is a person "directly and proximately harmed as a result of the commission of an offense," 18 U.S.C. § 3663A(a)(2), and the government can qualify as a victim of a crime for restitution purposes. United States v. Mateos, 623 F.3d 1350, 1370 (11th Cir. 2010). The cost of investigating a defendant, however,

---

[5] The government also argues that even if the district court erred by including the agents' salaries in the amount of loss, the error would be harmless. "Where a district judge clearly states that he would impose the same sentence, even if he erred in calculating the guidelines, then any error in the calculation is harmless." United States v. Barner, 572 F.3d 1239, 1248 (11th Cir. 2009). Because we conclude that the district court did not err in its guidelines calculation, we need not reach that issue.

10

should not be included in a restitution order.  See United States v. Khawaja, 118 F.3d 1454, 1460 (11th Cir. 1997).

As we have already discussed, the government suffered a pecuniary loss when it expended 320 hours of investigator time searching for an allegedly corrupt EPA employee as a direct result of Tomlin's false statements.  The salaries of those agents do not represent "the cost of investigating the defendant" because the agents were not investigating Tomlin at that time—they were instead investigating Robert.  Accordingly, the district court included the salaries of those EPA agents in the restitution amount to account for that pecuniary loss.  It did not err by doing so.

**AFFIRMED.**